UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-CV-18-KSF

ANTHONY HAYES                                                                    PETITIONER

VS:                  **MEMORANDUM OPINION AND ORDER**

DEBORAH HICKEY, *Warden*                                  RESPONDENT

Anthony Hayes is confined in the Federal Medical Center located in Lexington, Kentucky (FMC-Lexington"). Hayes has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his prison disciplinary conviction. R. 2. The named respondent is Deborah Hickey, the Warden of FMC-Lexington. Hayes has paid the $5.00 filing fee. R. 5.

Promptly after the filing of a petition for writ of habeas corpus, the Court must review the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing 28 U.S.C. § 2254 Cases; (applicable to § 2241 petitions under Rule 1(b)). *See*, *e.g.*, *Patton v. Fenton*, 491 F.Supp. 156, 158-59 (M.D. Pa.1979)*; see also* 28 U.S.C. § 2243. The district court may summarily dismiss a petition if it appears from the face of the petition that the petitioner is not entitled to relief. *See* 28 U.S.C. § 2243; *Blevins v. Lamanna*, 23 F. App'x 216, 218 (6th Cir. 2001); *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir.1970). For the reasons set forth below, the Court will deny the instant § 2241 petition because Hayes has not alleged facts which would entitle him to relief.

CLAIMS AND RELIEF SOUGHT

Hayes alleges that his due process rights, under the Fifth Amendment of the United States Constitution, were violated during the course of disciplinary proceeding which transpired at the Federal Correctional Complex located in Terre Haute, Indiana ("FCC-Terre Haute). The Disciplinary Hearing Officer ("DHO") convicted Hayes of "Possession of a Hazardous Tool," a violation of Bureau of Prisons ("BOP") Code 108.[1] Among other sanctions imposed, Hayes lost 60 days of Good Time Credit ("GTC") from his federal sentence, and was ordered to forfeit 108 days of non-vested GTC. Hayes seeks the expungement of the disciplinary report and the reinstatement of his forfeited GCT.

ALLEGATIONS OF THE PETITION
1. Disciplinary Charge and Conviction

On June 21, 2008, Hayes was serving his federal sentence at the FCC–Terre Haute. On that date, Senior Officer J. Sims searched Hayes' room and discovered, in Hayes' secured locker, a silver Samsung Verizon Cellular phone which had been wrapped in plastic and placed inside of a bottle of natural fiber therapy. Sims filed an Incident Report in connection with the discovery, charging Hayes with violation of BOP Code 108 (possession, manufacture, or introduction of a hazardous tool).

---

[1] The various levels of BOP offenses are set forth in 28 C. F. R. § 541.13, Table 3. The most serious offenses ("Greatest Category") are listed in Code Nos.100-199; the next level of offenses ("High Category") are listed in Code Nos. 200- 299; the next level of offenses ("Moderate Category") are listed in Code Nos. 300-399; and the final and lowest level of offenses ("Low Moderate Category") are listed in Code Nos. 400-499.

The initial disciplinary hearing was conducted on July 24, 2008, at FCC-Terre Haute and the presiding DHO was F.A. Bierschbach. In his DHO report, Bierschbach noted that Hayes had appeared at the hearing; that Hayes had been accompanied by his staff representative; that he had considered the statements submitted by Hayes' witnesses; but that Hayes' representative "was unable to offer any verifiable information to help mitigate the charges against [Hayes]." R. 2-2, p. 2.[2]

Bierschbach determined that based on the greater weight of the evidence, which he defined as the statement of the BOP reporting staff and a photograph of the cellular phone recovered from Hayes' locker, Hayes had in fact possessed a cell phone and had thus violated Code 108.[3] The punishment imposed was: (1) forfeiture of 40 days of GTC; (2) forfeiture of 108 days of non-vested GTC; (3) 60 days in disciplinary segregation; (4) two year's loss of phone privileges; and (5) one year's loss of visiting privileges.

---

[2] Bierschbach stated that because Hayes was housed in the Special Housing Unit at the "FCI" and Hayes' two witnesses, Inmates Williams and Franklin, were housed at "the Camp," Williams and Franklin were unavailable to testify. *See* DHO Report, R. 2-2, p. 1, § 3. Due to concerns for the security and orderly running of the institution, Hayes' staff representative had obtained statements dated July 18, 2008, from both Williams and Franklin. *Id*. According to Bierschbach's DHO Report, Williams stated that Hayes left his locker unlocked all the time. *Id*. According to Bierschbach's DHO Report Franklin stated that on the date the cell phone was discovered, Officer Sims stopped before entering the room and searched an inmate; that during that time, several inmates were moving around the room; and that Hayes always left his locker unlocked. *Id*.

[3] In relying on the assessment contained in the Incident Report, the DHO noted that BOP reporting staff has "the duty and obligation to report the truth and submit accurate statements." *Id*.

Hayes appealed the conviction. On February 23, 2009, K. M. White, the Director of the BOP Mid-Atlantic Regional Office, issued a ruling remanding the Incident Report to the DHO for rehearing. R. 2-2, p. 6. No reason for the remand was stated.

Because Hayes had since been transferred to FMC-Lexington, the rehearing ensued on March 12, 2009 at FMC-Lexington. DHO Timothy Smart presided over the proceeding; concluded that Hayes had possessed a cell phone in violation of Code 108; and imposed the same sanctions as Bierschbach had imposed. *See* Re-Hearing DHO Report, R. 2-2, pp. 7-10.

Specifically, Smart noted that although Hayes' witnesses, Inmates Williams and Franklin, were considered unavailable, he had considered the statements they made to Mr. J. Edwards, who had been Hayes' previous staff representative. *Id.*, p. 8. Smart elaborated that his finding of guilt was based on: (1) Senior Officer Sims' discovery of the Samsung cell phone in Hayes' secured (*i.e.*, locked) locker; (2) photostatic photographs depicting a cell phone; and (3) Hayes' failure and/or refusal to give a statement to the investigating officer, which DHO Smart characterized as an implicit indication of guilt. Smart stated as follows:

> I find it relevant that you declined to make a statement to the investigative lieutenant concerning this incident. It is reasonable to believe, if you were innocent of this charge, you would have made this fact known to the investigative lieutenant and tell him your account of the incident. The DHO notes that this did not take place.

R. 2-2, p. 9.

The DHO noted that the BOP considers cell phones in the hands of inmates a security hazard because they can be used for making phone calls; circumventing BOP rules; furthering criminal activity or facilitating an escape. *Id.*, p. 8. Smart further stated that inmates are

4

expected to take affirmative steps to "ensure that there is no contraband in their cubicles and/or locker." *Id*., p. 9.

Smart discounted Hayes' assertions that his locker had been unlocked at the time of the search; that he (Hayes) had been unaware of the existence of the cell phone at the time of the search; and that someone else could easily have placed the concealed cell phone inside of his unlocked locker. DHO Smart assigned significance to the circumstances under which the cell phone was found. He stated as follows:

> The DHO notes the cell phone was concealed and wrapped in plastic, hidden in a bottle of natural fiber therapy to avoid detection. Your access to the cell phone is some evidence you had constructive possession of the cell phone. In this case, the cell phone was accessible to only you as the locker was locked prior to the officers [sic] search. Furthermore, your responsibility for ensuring your locker was free of contraband established your culpability in this incident.

*Id*.

## 2. Administrative Appeals

Hayes did not attach documentation relative to his administrative appeal to the BOP's Regional Office, but he must have filed such an appeal because the BOP Central Office entertained his appeal on the merits. On December 3, 2009, Harrell Watts, the Administrator of Inmate Appeals issued a written denial of Hayes' final administrative appeal. R. 2-2, p. 15. Watts concluded that the BOP had substantially complied with PS 5270.07, *Inmate Discipline and Special Housing Units*, which requires that if the facts are contradictory or conflicting, the DHO's decision be based upon the greater weight of the evidence.

Watts noted that Hayes had denied the charge and had claimed that the only thing of which he was guilty was keeping his locker unlocked. Watts determined that the Code 108


conviction was appropriate and was based on the greater weight of the evidence, which he identified as being the reporting officer's statement. Watts rejected Hayes' claim that the DHO had been biased against him.

Watts further determined that to the extent that the DHO had relied on witness statements, he had substantially complied with the requisite disciplinary procedures. He found that there was some evidence in the record to support the DHO's findings and that the proper sanctions had been imposed. Hayes filed the instant § 2241 petition on January 19, 2010.

### 3. Claims Asserted in § 2241 Petition

Hayes asserts four arguments. First, Hayes argues that the DHO improperly refused to allow him to call witnesses on his behalf, and instead relied on written statements prepared by Hayes' staff representative. Hayes asserts that the DHO could have, and should have arranged a "telephone hearing" through which Inmates Franklin and Williams could have given actual testimony. According to Hayes, the witnesses' telephone testimony would have "illuminated more light on the case and the witnesses may have remembered things that they may have forgotten in the first hearing." R. 2-1, p. 3.

Second, Hayes contends that sanctions imposed at the rehearing were improper. Hayes claims that DHO Smart erred by imposing the same sanctions imposed in the first hearing. Hayes asserts that the BOP Regional Office remanded the matter so that the previously imposed sanctions could be corrected, not simply re-assessed. *Id.*, p. 4

Third, Hayes claims that he "did not remain silent in his case" and that DHO Smart assigned too much weight to the fact that he (Hayes) did not give a statement to the investigating

6

officer. *Id*. Hayes claims that at the rehearing, DHO Smart should have inquired why he did not give a statement to the investigating officer instead of merely assuming that he failed to do so because he was guilty. According to Hayes, the investigating officer did not ask him to provide a statement. Hayes provides this explanation:

> The Lieutenant only asked the Petitioner if he knew what he was locked up for and to explain his story to the UDC. The Lieutenant then slid the incident report under the door. Ergo, he remained silent . . . . Furthermore, the Petitioner explained to the UDC and the DHO Officer what happened and he still came to the same conclusion of guilt.

*Id*.

Fourth, Hayes argues that the greater weight of the evidence did not support a finding of guilt. *Id*., p. 5. In support of that claim, Hayes asserts the following assessment of the evidence: two reliable witnesses gave statements on his behalf; he did not actually possess the cell phone; the cell phone was "placed in plane [sic] view in the Petitioner's locker;" no phone numbers on the cell phone corresponded to him; the cell phone was not in his name; his fingerprints were not on the cell phone; he constantly uses the institutional phone; he was not in the room; and his locker had been left open. Hayes reiterated that the BOP Regional Office had a specific reason for remanding the proceeding, and he extrapolated that if the Regional Office thought he was guilty, it could simply have denied his appeal and closed the case.

## DISCUSSION
### 1. DHO's Reliance on Written Statements In Lieu of Telephone Testimony

To the extent that Hayes claims that the DHO erred by refusing to allow witnesses to testify by telephone, he does not assert a valid Fifth Amendment claim. Due process claims require that the plaintiff suffer a deprivation of a constitutionally protected liberty or property

7

interest. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

A prisoner does not have a constitutional right to confront and cross examine witnesses in a disciplinary hearing. *Wolff*, 418 U.S. at 567; *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir.1993).[4] Rather, a prisoner's right to call witnesses and present evidence at a disciplinary hearing is circumscribed by competing concerns for institutional safety and other correctional goals. *Ponte v. Real*, 471 U.S. 491, 495 (1985); *Wolff*, 418 U.S. at 566.; *see also Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976) (a prisoner's right to confront and cross-examine adverse witnesses in a disciplinary hearing is generally more limited than the right to call friendly witnesses, but similar interest balancing may be applied).

---

[4]

In *Wolff*, the Supreme Court explained that a disciplinary proceeding does not implicate the full range of rights due a defendant in a criminal proceeding, such as the absolute right to cross-examine a witness:

> If confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls. Proceedings would inevitably be longer and tend to unmanageability. These procedures are essential in criminal trials where the accused, if found guilty, may be subjected to the most serious deprivations, or where a person may lose his job in society. But they are not rights universally applicable to all hearings. Rules of procedure may be shaped by consideration of the risks of error, and should also be shaped by the consequences which will follow their adoption.

*Wolff*, 418 U.S. at 466 (internal citations omitted).

A DHO has the authority, consistent with a prisoner's due process rights, to refuse to call witnesses whose testimony he or she believes will be cumulative to other evidence or simply irrelevant to determining the inmate's guilt of the charge. *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2nd Cir.1999). The presence of witnesses at the hearing may be refused when it creates an undue risk of reprisal or harassment, undermines authority, or otherwise creates undue burdens on the safe administration of the prison. *Ponte v. Real*, 471 U.S. 491, 495 (1985); *Wolff*, 418 U.S. at 566; *see also Ramer v. Kerby*, 936 F.2d 1102, 1104 (10th Cir. 1991) ("[L]egitimate penological concerns include, but [are] not limited to, safety or correctional goals, expense, staffing requirements ... and the danger of harassment.").

When challenged, prison administrators bear the burden of showing that the reasons for the denial were not arbitrary. *Ponte*, 471 U.S. at 497. They may make their reasons known at the time of the disciplinary action or wait until the prisoner brings a legal action. *Id*. The district court's role is not to substitute its judgment for that of the prison officials charged with conducting the disciplinary hearing, but to determine whether the proof offered to explain the refusal to call these witnesses satisfactorily carries the defendants' burden of showing that the decision was not arbitrary. *Id*., at 497-99; *see also Freeman v. Rideout*, 808 F.2d 949, 955 (2d Cir. 1986) (same), *cert. denied*, 485 U.S. 982 (1988).

The Court determines that DHO Smart did not arbitrarily refuse to allow telephone testimony from the two inmate witnesses. BOP Program Statement ("PS") 5270.07 governs witnesses at DHO hearings.[5] Pursuant to PS 5270.07, a witness need not be called if their

---

[5]

PS 5370.07 states in relevant part at Chapter 7, page 3:

knowledge is set forth in the Incident Report or "other investigative materials supplied to the DHO." Here, DHO Smart determined that the testimony of Inmates Williams and Franklin had been sufficiently set forth in "other investigative materials," in this case, the witness statements which Hayes' staff representative had prepared for the first hearing.

In these statements, the witnesses stated that Hayes customarily kept his locker unlocked; that on the date the cell phone was discovered, Officer Sims stopped before entering the room and had searched an inmate; and that during that time, several inmates were moving around the room. Ostensibly, Hayes offered these statements in support of his claim that his locker was unlocked on the date of the search; that others had access to his locker; and that anyone could have placed the cell phone therein.

Hayes offers no particularized explanation of how the inability of these witnesses to testify by telephone prejudiced his defense. Indeed, Hayes only generally speculates that these witnesses "*may have* remembered *things* that they may have forgotten in the first hearing." R. 2-1, p. 3 (emphasis added). He points to no specific information or "things" that were omitted from the witnesses' statements. After consideration of the witnesses' statements, DHO Smart rejected Hayes' argument that someone else could have, and did, plant the cell phone in his

---

> The DHO need not call repetitive witnesses. The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials supplied to the DHO. The DHO shall request submission of written statements from unavailable witnesses who have information directly relevant to the charge(s). The DHO shall document reasons for declining to call requested witnesses in the DHO report, or, if the reasons are confidential, in a separate report, not available to the inmate. The inmate's staff representative, or when the inmate waives staff representation, the DHO, shall question witnesses requested by the inmate who are called before the DHO.

unlocked locker. The DHO determined that the investigating officer's report, which stated that the cell phone was found inside Hayes' *locked* locker, accurately represented the facts. Hayes does not establish how the failure to allow Inmates Williams and Franklin to testify by telephone either hindered the defense of his case or would have amounted to anything more than cumulative testimony.

Errors made by prison officials in denying witness testimony at disciplinary hearings are subject to harmless error review. *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006); *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *Brown v. Braxton*, 373 F.3d 501, 508 (4th Cir. 2004); *Alkhalidi v. Davis*, 88 F. App'x 931, 933-34 (7th Cir. 2004). Based on the fact that DHO Smart assigned full weight and credibility to the investigating officer's version of the facts, the Court cannot conclude either that the exclusion of telephone testimony from these witnesses was improper, or that Hayes suffered clearly demonstrable prejudice thereby. Accordingly, Hayes' assignment of error on this issue is without merit.

2. Improper Sanctions; Alleged Bias of DHO; and Insufficient Evidence

Hayes' remaining three allegations also lack merit. Hayes speculates that K. M. White, the Regional Director of the BOP Mid-Atlantic Regional Office, found error with the sanctions imposed by DHO Bierschbach in July of 2008 and directed a remand based on the alleged error. Nothing in White's Response indicates that this was the case. It is just as likely that White simply concluded that Bierschbach's findings lacked adequate factual development, and that in order to protect Hayes' right to due process of law, he remanded and directed a rehearing on the charges. On remand, DHO Smart reached the same conclusions as Bierschbach did but

11

elaborated his findings in more detail. Smart discussed the factual basis for the Incident Report; expanded upon the evidence adverse to Hayes; and developed his reasons for the conviction in more detail than Bierschbach had.

As for the specific sanctions imposed against Hayes, they are not excessive because they fall squarely within the range of penalties authorized under the category of "greatest" prohibited acts. *See* 28 C.F.R. § 541.13, Tables 3 and 4.

Hayes next contends that he was denied a hearing in front of an impartial decision-maker. A prisoner has a right to have a disciplinary hearing conducted by an impartial decision maker. *Wolff*, 418 U.S. at 566, 570-71. For Due Process purposes in prison disciplinary hearings, "[t]he requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in circumstances underlying the charge." *Speight v. Minor*, 245 F. App'x. 213, 217 (3d Cir. 2007) (quoting *Meyers v. Alldredge*, 492 F.2d 296, 306 (3rd Cir. 1974)). Here, there is no record of DHO Smart having any personal involvement in the circumstances underlying the charge against Hayes.

Hayes points to nothing specific in support of his claim of bias, other than the fact that DHO Smart completely discounted the truthfulness of his version of the events and rendered an adverse decision - - the same decision which another DHO had reached based on the same evidence. There is no constitutional infraction absent a showing of actual bias. *Komyatti v. Wright*, 78 F.3d 586, 1996 WL 89246, at *2 (7th Cir. March 1, 1996) (Table). Simply put, Hayes has not established a claim of bias on the part of DHO Smart. *See MacMillan v. Pontesso*,

73 F. App'x 213, 215 (9th Cir. 2003) (single factual inaccuracy in the DHO's Report did not amount to a showing of bias); *Redding v. Holt*, 252 F. App'x. 488, 491 (3rd Cir. 2008) (prisoner failed to demonstrate bias on the part of the DHO).

Finally, Hayes claims that based on the totality of the evidence which he outlines in his § 2241 petition, there was insufficient evidence to support his conviction. Pursuant to *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985), a disciplinary conviction must be upheld as consistent with due process as long as there is "some evidence" to support the decision. *Id.* at 454-55. "Some evidence," as its name suggests, is a lenient standard. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). A district court has no authority under the guise of due process either to review the resolution of factual disputes in a disciplinary decision or to weigh the credibility of the witnesses. Rather, a district court merely ensures that the disciplinary decision is not arbitrary and does have evidentiary support. *Superintendent*, 472 U.S. at 457. Even meager proof is sufficient under the "some evidence" standard. *Webb*, 224 F.3d at 652.

Hayes claims that his locker was unlocked and that someone else could have put the cell phone in his locker. The DHO was free to reject that argument and instead rely on the investigative report which stated that because Hayes' locker was locked, the interior of his locker was under his complete and total control, thus negating the claim that someone else planted the cell phone. In *Perez v. Rios*, No. 08-CV-171-KKC, 2009 WL 499141 (E.D. Ky. February 27, 2009), this Court was faced with similar facts and legal arguments from a prisoner. In *Perez*,

13

knives were found within Perez's cell; he was convicted of possessing a hazardous tool; and he forfeited 41 days of GTC. *Id*. at *1.

Perez argued that the knives did not belong to him. In denying Perez's § 2241 petition, the Court noted that inmates are responsible for ensuring that their cells remain free of contraband. Relying on *Hill*, the Court found that there was sufficient evidence to support the DHO's finding that because Perez was in control of his cell area, he had been in possession of a hazardous tool. *Id*. at *2. *See also Kenner v. Martimer*, No. 08-CV-73-KKC, 2008 WL 2355832, *3 (E.D. Ky. June 6, 2008). The rationale of *Perez* applies to this case.

The inquiry is whether there is "some" evidence to support the guilty verdict. In the instant proceeding, there is "some" evidence to support the disciplinary conviction. That evidence consisted of the investigating officer's report stating that he found a cell phone concealed in a bottle stashed inside of Hayes' locked locker, and the photograph of the phone.

Furthermore, the DHO was free to assign greater weight to the fact that Hayes did not give the investigating officer a statement on his own behalf. Hayes now argues that DHO Smart misinterpreted his silence during the investigative stage and emphasizes that he had never been asked to give a statement by the investigating officer. However, as the trier of fact, DHO Smart was allowed to draw the inference that Hayes simply failed to affirmatively deny his guilt at the critical time when the matter was being investigated. While a defendant's Fifth Amendment right not to testify cannot be held against him during a criminal trial, the Court has explained that the procedural considerations in disciplinary proceedings are substantially less rigorous than those in a criminal proceeding

Although the investigating officer's report is not one hundred percent evidence of guilt; and although Hayes raises some factual disputes with the report, it is not the role of this Court to weigh the credibility of the evidence or substitute its judgment for that of the DHO. The investigating officer's report constituted "some" evidence upon which DHO Smart could reasonably rely in finding Hayes guilty and imposing the penalties assessed.

As Hayes' disciplinary conviction was supported by "some" evidence as required by *Superintendent v. Hill*, his Fifth Amendment due process rights were not violated. The petition will be dismissed.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Petitioner Anthony Hayes' 28 U.S.C. § 2241 petition for writ of habeas corpus, R. 2, is **DENIED**.

(2) This action will be **DISMISSED**, *sua sponte,* from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named respondent.

This April 28, 2010.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge